The first case on the argument calendar is Thrush v. Hillman Group, Inc. 03-16015. We've read your briefs, and we look forward to your argument when you're ready. Members of the 9th District, good morning. My name is William Hulsinger, and I'm representing Thrush Fasteners. This case really is grounded on two sentences in the District Court's April 24, 2003 order, which states in part, and I paraphrase, the customer pays the normal price for fasteners and receives racks in addition to fasteners. These gifts or sales below cost of racks, which defendant does not otherwise sell, are permitted under California Business and Professionals Code Sections 17043 and 17044, and then they rely upon the co-opportunity space. Because the District Court reasoned at the urging of Hillman that the sale of racks and giveaway of product is the same as the giveaway of racks and the sale of product, the principal issues in this appeal have become, as outlined in the briefs, one, whether the District Court erred in concluding that the giveaway of product, in this case hardware, was irrelevant because, two, the racks were used to display product were ancillary to Hillman's principal business of selling hardware. In this regard, the Ninth Circuit has been invited by the District Court and Hillman to clarify the meaning of the term ancillary in relation to products or services and to adopt a reasoning that permits the giveaway or discount of product that is the core of a business in apparent violation of the Unfair Practices Act by coupling it with the sale of ancillary product that is an integral part of the storage, display, and marketing of that product. Secondarily, the Court is called upon to interpret or apply the California Supreme Court's 1999 decision in Celtic Communications v. Los Angeles Cellular Telephone by considering what factual showing of intent or purpose to injure competitors or destroy competition is necessary in order to state a valid claim. In this regard, the Court has an opportunity, as urged by Justice Baxter in his dissent in that case, to consider the Celtic decision in conjunction with Business and Professionals Code Section 17071, which creates a presumption that there is the requisite intent or purpose when there is a combination of injurious effect and the mere act of giving away the product or selling it below cost. I just want to make sure I've got this right. On the purpose to injure question, you prevailed in the District Court. That is correct. As far as that question is concerned, the District Court was willing to go to trial on that question. That is correct. We agree with the District Court on that ruling. However, that has been raised in the brief. So to the extent that's raised in the briefs before this Court, I was prepared to address it. But I did want to first address the issue of ancillary product. The ancillary product we're talking about would be the rack. Correct. Is there anything in the record that shows if you don't buy the rack, where's the racks? In other words, I guess what I'm kind of confused about is if I am a vendor or a retailer and I buy your fasteners, I guess I could have wooden boxes on the floor and just dump your fasteners in them, okay? So in this case, I can't find in the record that everybody bought racks, somebody bought racks, nobody bought racks. Apparently somebody did buy racks. And if so, then those racks were used with this product. And as I understand it, once you bought, if I understand the dollar-for-dollar program, once you bought the equivalent amount of fasteners equal to the cost of the racks, I don't know what in some of this record it appears that the racks were up to $1,700. I don't know what it is. Once you bought that amount, you received a credit on the account. Is that right? That's my understanding, yes. And the exhibits that I found in the record show that that showed a zero balance for a credit against the cost of the rack. That's the way accounting showed it. Yes. Now, somewhere in the briefs it said you receive an account credit, and yet on these documents that I found in the record it shows that it was a merchandise credit. Now, does that make any difference? I guess what I'm getting at after all this elaboration is it appears that if you bought X dollars, and let's assume that the rack cost $1,700, you bought $1,700 worth of product, they would credit into your account $1,700. And I guess, regardless of how the accounting went, if you ordered $1,700 more fasteners, you'd get a bill for zero. You'd get an invoice that says $1,700 worth of fasteners amount due zero. Is that the way it would work? Yes, and indeed the record also indicates that that credit existed. The invoices were postdated, if you will, so that interest did not accrue on that. I would note that in the motion for reconsideration by Hillman, the hook for reconsideration by the district court was the notion that these racks were not sold outside of the dollar-for-dollar program. No, but isn't that something we have to accept from this record, though, because the declaration commences, we don't sell a rack. In reading the case of co-op opportunities, there's some stray language which would kind of indicate that if, in fact, we could say that the racks were not a product that was normally sold, then maybe giving away the rack, if you could construe all this accounting business, is not a product that was ordinarily sold. Therefore, it takes it out of the application of the statute. The analogy I would like to submit to the Court's attention is the notion of a manufacturer of beer which sells the kegs that contain the beer to bars and restaurants and then gives the beer away for free. You can't have one without the other. Well, I don't understand the argument that either the racks or the fasteners are free. That is to say, if the hardware store gets the racks, they owe the money for the racks. On the other hand, they can then get fasteners up to what the price they would have paid for the racks are. Then they pay the ordinary price for the fasteners. But let's assume they pay $2,000 for the racks. They then get a $2,000 merchandise credit for the fasteners. They then take the $2,000 worth of fasteners. They have just spent $2,000 for the racks and for the fasteners. There was no way they got the racks for free. They either spent $2,000 in cash or they spent $2,000 and got the fasteners in addition. But it was a package deal. Yes. And similarly, looking at it from the other side, I don't think the fasteners were free either. That is to say, in order to get that first $2,000 worth of fasteners, you had to buy the $2,000 worth of rack, which means you spent $2,000, you got racks, and you got fasteners. But you had to spend the $2,000. I would acknowledge to you that that is the reasoning or perception that I believe began the district court in concluding that the sale of racks and giveaway of fasteners was no different than the giveaway of the racks and the sale of fasteners because ultimately the customer pays. What I would draw the court's attention to is that that's not what happened, that indeed in order to get the fasteners at the price of zero, if you will, they had to purchase the racks. I understand. So if I can use a term that might have other connotations, they were tied together. Well, marketing is floor space. If you have the racks, you get marketing. And so if I'm the vendor and I want to sell my products and say, yeah, I'd like some floor space in your store, and what I want to do is put my racks in, and the guy says, fine, but he says, God, these racks cost me $2,000. Tell you what, give me a check for $2,000. I'm going to put it in my pocket here and you give me the floor space. Now, when you buy $2,000 worth of fasteners, I'm going to give you the check back. And it happens. Same case? I would say it's not dissimilar, but what I would note to you is that the two are inextricably tied together. The sale of the racks or the use of the racks is an integral part of the storage and marketing and sale of the product. So what if the store decides to put wooden boxes on the floor and scatter all these parts all over the floor where people can't find them, and the vendor says, wait a minute, why don't you sell more and why don't I sell more? Why don't we organize this in a rack? Now, I've got a rack, but it costs me $2,000. And what I'd like to know is that you're really going to market my products. I'll tell you what I'm going to do. I'm going to put the rack on the floor if you give me the space. You give me the $2,000. I'm going to put it in my pocket. Let's sell a whole lot of fasteners. And if you do, you get the $2,000 back. Now, where is the discount or where is the discount on the product? I paid, as a retailer, I paid full bore for every fastener that I bought. Well, you can't have the product at that discount without the sale of the racks. The racks become an integral part of it. Sure you can. If the guy next door and I say, look, I like the homey touch. I'm going to put wooden boxes on the floor. You both pay the same price for the product. I throw them in a box on the floor, I pay $0.10 a dozen. I bought the rack, I pay $0.10 a dozen. The only difference is that I'm marketing like crazy because I've got this beautiful rack where people can find the stuff. Is that a marketing issue? It has nothing to do with discounting. It has to do with how you market the product. Well, again, I would respectfully disagree because I think this is more in the nature of the beer and the keg. You can't. Yes, indeed. You could put the the fasteners or the hardware on the floor and around the walls of a hardware store. But that indeed is not what was happening. And indeed, there's no indication in the record that retailers were doing that or were enticed to do that. So, well, let's go to let's go to an easy issue. And how about causation? Is causation necessary to show that this practice caused you to go bankrupt? In other words, I think your charge is that because of these practices, you went out of business. You went bankrupt. You had to file bankruptcy. Now, doesn't there have to be a causation between what happened here with Hillman and these practices relative to the rack and your bankruptcy? One moment, please. The the principal issue on causation that this case is presenting in the is the issue of purpose or intent. And if the issue of purpose or intent is to take business away from or on or compete with competitors, then really the fundamental issue is diversion of trade to the purposes to divert trade from the competitor. And here we have a documentary record of the dollar for dollar program documents, as well as the other documents in the record from Hillman showing that indeed they were focused on doing that. And then you also have the the supplemental records showing that they got those orders. And since those orders were specifically to replace thrush. As the as the provider or distributor wholesaler of the product, I believe you have the record in there that shows that thrush no longer had had that business, and therefore there is a causation of economic loss claiming you are claiming that because of Hillman's activities, you were forced into bankruptcy. Well, I think that is a conclusion to reach and that that has been presented as a result of the loss of business. If you don't show any harm, what who cares? You know, I mean, well, I agree. But whether or not that was the only cause or the only factor in the bankruptcy of thrush is not the issue. The issue is whether or not there was trade diverted from thrush. And the dollar for dollar program was uniquely focused to take that trade away from thrush. Are you saying that you've you've accomplished enough? This was summary judgment, right? Yeah, you've accomplished enough in summary judgment to get over the sell attacks standard. And so then it would be up to Hillman to show that you bought 14 new Mercedes and you had a wild lifestyle that threw you into bankruptcy. So it's their burden to go forward. No, I'm saying I'm saying that all thrush has to do is show that there was the diversion of sales. There was a diversion of customers and business from thrush as a result of the dollar for dollar program, which is shown by the program as it was set up, that it was focused just on the conversion of thrush customers. And to show the orders that qualified for the dollar for dollar program, which is the result of diversion of business from thrush. So what we're showing is an economic harm, whether it resulted in bankruptcy or not, is a matter of proof or the extent of that harm is a matter of proof. Your time is running. I'd like to get this question in. Assume for just for purposes of the example that the racks cost $2,000 and then the customer, the hardware store, gets $2,000 worth of merchandise credit for the fasteners, takes those $2,000 worth of fasteners. Do we have evidence in the record from which we can determine what Hillman's cost was for that package of the racks plus the fasteners so that we can determine whether the $2,000 is below their cost? In the underlying motions for summary judgment, the motion itself was focused on the cost versus the markup. And indeed, they were showing markups in the range of 74 percent, you know, significant markups. Let me cut to the chase. Do we have evidence of the cost to Hillman of the racks? Yes, that is in the record. So if you have a dollar for dollar credit on the But it's not in the excerpt of the record that you supplied us. It is part of the record that was supplied in terms of the underlying motion for summary judgment. I don't have I can't answer your question directly. Have you preserved the question on appeal to us as to whether or not the package of the racks and the fasteners was sold below cost? I'm afraid I can't answer that question. What we do have is we have the indication clear in the record of what the percentage markups were of the cost from the cost to the sale. And do you contend that your evidence shows that the package of the racks and the fasteners was sold at below Hillman's cost? Yes. Okay. Now, your time is run, but we'll give you a minute or so in rebuttal. Thank you. Thank you. May it please the Court. Mark Van Bressel for the defendant and appellee Hillman, the Hillman group. I would like to address some of the issues that you justices have raised. And first of all, this case has been of an evolving nature. The appellant first argued that there were below cost sales. That was the crux of their case. And that has disappeared. They've abandoned that argument. So then they shifted to an argument that the racks indeed were the primary product sold by Hillman and that the fasteners were somehow collateral. That argument, too, has fallen away. So the Thrush appellant is now left with the argument that really they acknowledge that fasteners, metal fasteners, are the primary product. And they claim that we have violated the Unfair Practices Act by selling or giving away that merchandise. Can we stop right there? Because I'm with you. I'm not too sure what we heard relative to the acts violating the statute. But as I understand it, giving away the rack or giving a credit that becomes a credit toward purchases of product at list price is some sort of a gift. Because if we're not selling below cost, then the two prongs of statute come into play and you're giving a gift. Is that what you're arguing? You are correct. What's your understanding of what the gift is here? My understanding is that the gift is the racks. The racks, and I like Justice Fletcher's analogy, we're selling $2,000 worth of racks to this customer, and then we're telling the customer, now, if you've bought your 16 racks and you've spent your $2,000, they're your racks and it's our money. If you buy enough product to exceed the amount you paid for the racks, then we will give you a credit against the racks and you're getting the racks for free. Am I hearing here that you are conceding that the racks are a gift within the meaning of the statute and the case law? Yes. We are conceding that they are a giveaway within the meaning of the case law, and our position is that the racks are ancillary, and under the California Co-Opportunities decision, a giveaway of an ancillary product is permissible, and the prohibition against giveaways does not apply to ancillary products, as that decision has made clear. Now, do you give away these racks in any other context than in connection with this, I'll call it a promotion? Absolutely not. And why is that not ancillary? So you're not ordinarily in the business of selling racks. You only, quote, give them away, and you only give them away in this context. Correct. And that was one of the errors that the lower court made, which caused our motion for reconsideration. The judge had inadvertently looked at evidence from which he deduced that we sold racks outside the dollar-for-dollar program, and we do not. But doesn't that make it ancillary? The racks? Yes. The racks are ancillary. And that does make it ancillary. That's true. But I do like you were struggling, as I think I was, with the notion of we're selling 2,000 in racks, then we're giving back a credit for merchandise purchased. And as you correctly pointed out, we're getting $2,000 in our pocket for racks and for product. So I think the issue is whether really the racks are a giveaway or whether it's ---- Are you taking back the concession you made three minutes ago? Your question caused me pause, because it is true. We are getting a ---- it's really sort of a combined below-cost sale, I suppose, of both items, the ancillary item and the primary item. Now ---- Is that ---- Hmm? I don't understand that. Well, because ---- Did you now flip around again to something else? Excuse me? Did you go below-cost? I thought you said this was not a below-cost case. It is not. But ---- What was that last statement? Well, my last statement was Justice Fletcher's recognition that we are getting $2,000, and what we've given up is both racks and some merchandise. I don't understand that at all. Well, because if the racks cost $2,000 and the merchant paid us $2,000 for the racks, and then we gave them $2,000 worth of primary fastener product, and they ended up with $4,000 worth of racks and product combined, then I suppose in concept you could say that both of them were below-cost. I don't understand that either, because if they paid $2,000 for the racks, and then you gave them for $2,000 worth of product free that you just acknowledged, all you've done is given away $2,000 of product, and the racks became free to the store and their ownership. Is that what you're saying? No. Because they've already paid $2,000. That's right. Okay. No, they paid $2,000. Okay. So what was free, the product that you gave after the rack or the rack? Well, my position is the rack is what was free. And the rack ---- We're back to the concession, aren't we? I guess I'm right back to ---- Fortunately, I didn't watch what's next. Which flip-flop are we playing for? Okay. Okay, you're going to stay with the fact that the rack has been given free as a result of these entries in your books. Yes. Because there's no money going around, it's just credit entries. Once the $2,000, assuming we pay $2,000, once the $2,000 goes into the pocket, you don't get any money back, but you ship free product. The racks are a wash, kind of. Yes, that's true. And so, sorry for the digression. Okay, now, so if the racks are a gift, you lose unless they are ancillary within the meaning of the case law. Is that correct? I agree. I believe we do. Lose in the sense that you go back for trial. Right. If any hardware store that's your customer asks you for racks, will you supply the racks either on this dollar-for-dollar or on the 50% deal if they're an existing customer? We, although the record isn't developed on that, and there is no record evidence, the racks, no, if a store asked us for racks, it would only be provided pursuant to the dollar-for-dollar program. Or if they're an existing customer already selling Hillman product, it will be a 50-cent-for-dollar program? Exactly. Yes. But that means, then, that anybody who says, listen, I want racks according to the way you're selling them, either dollar-for-dollar or 50-cent-for-dollar, you're willing to supply them. Yes, that's true. And how can racks be ancillary when they are such an important part of the display of your product? They're not important. This is by no means analogous to the beer and the keg. The racks are. They can benefit both sides if they're attractive, and if the display allows the store to put them somewhere, the store may well find racks that are more attractive, that are cheaper. The store is free to find racks wherever they wish. Let's assume that we sell, quote, sell. We give away $2,000 worth of racks in the dollar-for-dollar program, and then you give away the $2,000 worth of fasteners, if giveaway is the right word. You finally have gotten a package of $2,000 to you. Racks and fasteners are given to the hardware store customer. Is that below your cost? The record doesn't demonstrate that, and there is no evidence on appeal. I would suggest to the court, however, that if you look at the markup on our product, it would more than exceed the cost. That is not below cost. Our markups and the markups in the record, that's why the appellant has abandoned the below-cost theory, because the Hillman markups, the profit margin is very high. In other words, you're making money when you sell the racks, even when you sell them in this package deal. Yes, absolutely. So you're selling fasteners, and any customer who wants to use your racks as a way of displaying the product, you're selling racks, and you're selling them in this package, but you're making money when you do it. Absolutely. How can the racks possibly be ancillary when they're such an integral part of the sale of the fasteners? Because they're simply something that, it's an inducement. It's an inducement to the purchaser to say, we will give you these racks if you buy a certain volume of product. But the racks are not every buyer, and the record doesn't reflect how many buyers, but certainly not every buyer avails themselves. Yeah, not every buyer wants them. But for a buyer who does want them, you're quite willing to sell them or give them away, whatever word you want, in accordance with these packages. Right. It's an inducement, but it's by no means integral. But you're not giving away free trips to Hawaii. I mean, you're not giving away something that's totally irrelevant to the product that you're selling, that is to say, fasteners. You're giving something that's tied directly to the product itself. Well, you know, they could use the racks to display any other product. I mean, there's no... Is there a picture of the racks in the record? No, there isn't. So I don't know whether they could use them easily or not to sell another product.  Does it say Hillman on the rack? No, it does not. But that's not in the record. Not on the record. Okay. Tell me about the record again. Let's, if I understand Appellant's argument, and I don't want to recast it. He can straighten it out if I misstate it. Somehow, because of your promotion targeting him, you violated the statute and put him out of business. And if we're down to gifts, as a part of that, the only place I can see a gift is in the dollar-for-dollar program. So we're away from, even though we found a purpose by the judge, an intent to go after them and to injure them, the only act that we're complaining about now has got to be the rack and the gift, okay? Okay. All right. Anything in the record to show how that relates to the competition? I.e., if Hillman sold, let's say, a thousand customers, and there was one rack, and that amounted to one of 100 percent of sales, that would be of interest if it was in the record, because he's alleging this is what causes damage. Is there anything in the record to show how many people bought racks, what percentage of the sales that have been alleged taken away from Thrush were rack sales? And I guess maybe this is causation, maybe it's relevance. I don't know. Is there anything in the record at all? There's nothing in the record. I couldn't find anything at all. No, there's nothing in the record. And I agree with Your Honor's earlier comment that there is no evidence of causation in this case. Companies go bankrupt. Counsel says he carried his Solitech's burden by saying he showed that he had sales, and he doesn't have any sales, and he doesn't have to show the direct causation between your ñ and, again, I guess we're back to dollar-for-dollar program. Right. I would refer the Court to the Century 21 v. Prudential decision and the Co-Opportunities decisions that say that if there's no injurious effect, I mean, to show the mere fact that they went into bankruptcy is insufficient. But we're now at summary judgment. How far does he have to go? He's alleged that in his complaint. Is there something in the pleadings in total that I would look at that would show that it was insufficient or that you've countered that? How do we look at the causation evidence in the record and analyze it? Well, I would refer the Court to those two decisions. In other words, even on summary judgment, unless they have some record evidence of a thrush customer that ñ and I think if you read Century 21 and Co-Opportunities, you'll see the Court saying it's not enough for the unsuccessful competitor to say that they diverted customers from us. They would have to show that these customers were otherwise satisfied and were diverted because of something that the successful competitor did. Well, but in Century ñ is it Century 21? Century 21. In the Century 21 case, there's a presumption there that was used and it said that the intent was enough. Is that correct or am I misreading? No. That's true. The intent is enough. Well, he's argued that. He said that the judge found intent so he doesn't have to go any further. So did you go forward with the evidence? No. I would direct the Court to Western Union v. First Data, which discusses the issue of intent and says that as to intent, in that case, the evidence shows nothing more than an intent to divert customers from a competitor, and that is not an unlawful intent. And anything in the record here, all it shows is Hillman's efforts, after Thrush had pirated away Hillman employees, Hillman, in internal memos, organized a team to try and gave bonuses to their employees who could sell to Thrush accounts. And that sort of intent is not unlawful. And if you compare that, the intent shown on this record, to the intent in Western Union v. First Data, I would suggest that that is not unlawful. The racks are not ancillary. No, everybody did not buy the racks. Everybody did not need to buy the racks. Merchants are free to display the product however they wish and may find cheaper racks or more attractive racks elsewhere. Racks are not ordinarily sold in the course of the business. And there is no evidence sufficient to show that with the racks and the product together that this was either below cost or above cost. So the record is inadequate in that regard. So in conclusion, unless there are more questions, we contend that what we end up here is a program, a lawful program under the Unfair Practices Act in which Hillman produced and sold or gave away an ancillary product, namely the racks, in exchange. Those racks were a giveaway if the customer bought a certain volume of product. If there's nothing further, I'm finished. Thank you. Thank you very much. Your timing is perfect. Your light did not start to blink. Would you like a minute in rebuttal? Very presidential. I appreciate the interest in the case, and I'll try and talk fast. First of all, in the Gary Seed's August 25, 1999 memo, which is in there, it says that it must be a thrush conversion. That's quote, unquote. Also in the dealer partnership agreements where dealers signed up to get to pay for the racks and therefore qualify for the free product, it shows who their current suppliers are, and those are filled in as thrush. So we have ample evidence to show that customers have been diverted, retailers have been diverted from thrush to Hillman based upon this dollar-for-dollar program involving the racks. I have four specific points I'd like to make in rebuttal and conclusion. One is that there was no gift of racks to anyone else unless they took away a thrush customer, changed from thrush, and they only got the free racks as part of this dollar-for-dollar program or if they specifically requested it, there's no evidence of that. Number two, the amount of the free product is dependent upon how much they paid for the racks, which is a part of how many linear feet will then be available in the store to display the Hillman product. Number three, the record is undisputed that the product was actually given away. It was a credit. So to the extent that we're talking about now we're making it a giveaway of racks rather than product, that's an argument that's not what the facts show.  We are creating a new opportunity for large competitors to unfairly compete with smaller direct primary competitors because they can then sell product that is an integral part of the storage, display, and marketing of their primary product and couple it with a giveaway of the primary product. And in that way they can create an unfair competition in the market if that is indeed what the conclusion of this case is. And so far we haven't seen that that's been permitted. Thank you very much for your time. Thank you very much for helpful arguments on both sides. The case of thrush versus the Hillman group is now submitted for decision. We'll take a very brief recess and then the panel will reappear shortly. All rise.
judges: Hall, Brunetti, W. Fletcher